Demarest *v.* Terhune.

---

## DEMAREST *vs.* TERHUNE.

1. To set aside a deed to a creditor on the ground of fraud, it must satisfactorily appear from the whole testimony, that the grantee took the conveyance of the property with a view to protect the property of the debtor from his other creditors, and not to save his own debt.

2. The fact that the grantee in a conveyance of real estate, alleged to be in fraud of creditors, is of kin to the grantor, is not of itself, alone, evidence of fraud.

3. Where a conveyance is sought to be set aside on the ground of fraud, the question must be, was the deed made honestly to secure a debt, or was it made to defraud creditors.

This cause was argued before A. S. Pennington, esquire, one of the masters of the court, who was called by the Chancellor to advise with him.

*Mr. C. H. Voorhis*, for complainant

*Mr. L. Zabriskie*, for defendant, Albert G. Terhune.

THE MASTER.

The bill is filed by John J. Demarest, a judgment creditor of Gilliam C. Terhune, to set aside a conveyance of certain property by Gilliam C. Terhune and wife to Albert G. Terhune, lying in the town of Hackensack.

The bill alleges that the land and premises were sold by Gilliam C. Terhune and wife to Albert G. Terhune, for the nominal consideration expressed in the deed, of $3000, while said lands are worth at least $5000; and charges, that the said deed was voluntary and without consideration, and was made for the purpose of hindering and defeating complainant in the collection of his debt, and to defraud him. The defendant, Albert G. Terhune, by his answer, admits that he knew of the indebtedness of Gilliam C. Terhune to the complainant, but denies that the said deed to him was voluntary or without consideration, or was in any way, directly or indirectly, made for the purpose of hindering or defeating the complainant or any other creditor of the said Gilliam C. Terhune, in the collection of his or their debts, credits, or claims, or to defraud him of any one of his just claims.

The answer further states, that on the 20th of November, 1863, Gilliam C. Terhune was justly indebted to him in the

sum of $2220, for money actually loaned and advanced by him to the said Gilliam before that time, and for which Gilliam gave him a mortgage; that $1000 has been paid on this mortgage; that said mortgage was registered in Bergen county; that afterwards, Gilliam became indebted to him in the further sum of $200, advanced by him for the support of his family, he being away in the service of the United States; that Gilliam C. Terhune had given a mortgage to Abraham Westervelt for $1000, which mortgage had been assigned by the executors of Abraham Westervelt to him, upon which there was due, at the time of making said deed to him, the sum of $1194.64.

It further states that said lands were, at that time, subject to another mortgage, given by Gilliam C. Terhune to Robert Campbell, for $500; that there was due on said mortgage, at the time of giving said deed, the sum of $705.54; that said lands were subject to a judgment obtained by Cornelius D. Taylor against said Gilliam C. Terhune, on which the said Albert G. Terhune has had to pay the sum of $78, to free said lands therefrom; that the whole of his claim, together with the said encumbrances and interest thereon, amounted to the sum of $3492.04, at the time of giving said deed; that these claims and encumbrances made the consideration of said deed; that the value of the said property, at the time of giving said deed, did not exceed $3000; and that his object in taking said deed was, to satisfy the said sums so due to him, and not to defraud, hinder, or delay the complainant or any other creditors, or to hold the property in trust for said Gilliam, or in any way for his benefit.

Testimony has been taken on the part of the complainant, and also on the part of the said Albert G. Terhune. There is no testimony in the case to show that the deed was voluntary and without consideration, and in the argument it was not pretended that the consideration for the deed was not properly set forth in the answer.

The complainant insisted, that there was not actual fraud,

but legal fraud, and that there were in this case the following *indicia* of fraud :

1. That the consideration was inadequate; the true value of the property being $5000.

2. That Albert G. Terhune was the uncle of Gilliam C. Terhune.

3. That Albert G. Terhune had knowledge of complainant's claim.

To set aside a deed on the ground of fraud, it must satisfactorily appear, from the whole testimony, that the grantee took the conveyance of the property with a view to protect the property of the debtor from his other creditors, and not to save his own debt.

1. As to the value of the property.

Testimony for the complainant. R. R. Paulison fixes the value at, at least, $5000. C. L. Blauvelt estimates it at $5000, including the value of the buildings $1000, and barn $400, to put it there now. Hazen W. Adams would have given $4000 for it; says he was rather partial to the place, having lived there before.

Defendant's evidence. John Huyler states, the property in August, 1864, was not worth more than $3500. It could have been rented for $300. I would call that a pretty tall rent for it. The Moore lots opposite are more desirable than this. William DeWolf thinks, in May, 1864, the value was $2500; that it has risen in value since 1864, and that it is not worth more now than $3500. William S. Banta told Albert G. Terhune that the property was not worth over $3000 at the time the deed was given, and he thinks that was its full value at that time; thinks $1000 the full value of the buildings.

It appears from the evidence, that the Moore property, opposite this property, was sold in the spring of 1864, at public vendue; that the property in dispute is one hundred feet by two hundred feet; that the Moore lots, opposite, sold at public vendue, one lot fifty feet by two hundred and seventy-five feet, for $875; another about the same size, for

less than $1000, price not stated, and that they were sold cheap. These Moore lots being two hundred and seventy-five feet deep, would make the lot of Terhune worth not more than $2000 for the whole lot, one, hundred feet by two hundred feet, in the same proportion, making all due allowances.

These witnesses are probably the best judges of the value of property in Hackensack, who could have been selected, and this case shows how, in speculative times, the best judges differ as to the value of property.

If these lots were worth in 1864, $2000, then the buildings thereon, being of the value of $1000 to $1400, according to the testimony, would bring the value of the property at the time of the sale, from $3000 to $3400, less than the price actually given, $3492.04. There is therefore no inadequacy of price that could reasonably be considered as any evidence of fraud.

2. That Albert G. Terhune is the uncle of Gilliam C. Terhune.

In a doubtful case, or where the facts in the case show fraud, relationship is some evidence of fraud, for it is probable that a party intending to perpetrate a fraud, would look for aid and connivance to a relation rather than to a stranger. But the mere fact of relationship is not of itself alone, evidence of fraud; there must be other strong *indicia* of fraud, for a man has a right to secure a debt due from a relation as well as from a stranger.

3. That Albert G. Terhune knew that the complainant had a claim against Gilliam.

It appears, by the testimony of Mr. Banta, that the deed was drawn before the suit of the complainant was instituted. This is very feeble evidence of fraud, for the fact of a man being indebted is a strong inducement for a creditor to get security for his debt.

In cases of this kind it must depend upon the intention of the parties to the conveyance; the question must be, was the

deed made honestly to secure a debt, or was it made to defraud creditors?

I would remark, that there is no evidence to show that anything was reserved to Gilliam C. Terhune, or that there was any reservation or stipulation in any event, in his favor. The defendant, Albert G. Terhune, has not been examined on this subject.

The testimony of Mr. Banta shows that Albert G. Terhune was anxious to secure his debt; that he applied to his counsel for advice; that his counsel advised him to get a mortgage; that he did thereupon get a mortgage, and had it recorded; that finding there was some question as to the legality of the acknowledgment, he sent his counsel to Camden to get a proper acknowledgment, and then had the mortgage again recorded; that Albert G. Terhune, being anxious to have the property sold to get · his money, again applied to his counsel about it; that his counsel stated to him that his claim and the other encumbrances were all the property was worth, and that he would have to foreclose the mortgage; and that his counsel then told him that if he could make an arrangement with Gilliam to give him a deed for the property, it would save the delay and expense of the foreclosure.

It appears from the evidence, that the proposal to get the deed did not come from either Albert G. Terhune or Gilliam C. Terhune, but from Mr. Banta, and that it was done under the belief that the property was not worth more than enough to secure Albert G. Terhune, and to save him the expense and delay of foreclosure.

It was contended, on the part of the complainant, that the conversation of R. R. Paulison with Albert G. Terhune, after he had advertised the property for sale, in which he expressed his willingness to apply the overplus, after paying himself, (if any there should be) to the payment of Gilliam C. Terhune's debts, is evidence of a fraudulent intent; but I think it is a strong fact to show that his object in this whole business was to save himself from loss; for if he had designed to defraud the creditors, he would have at once refused so to do. It was

a gratuitous offer, and should have been received in a proper spirit, or, as Mr. Paulison says, they ought to have been satisfied.

I do no' see in this transaction any sufficient evidence of fraud, and would respectfully advise the Chancellor, that in my opinion, the complainant has failed to maintain his case, and that the complainant's bill should be dismissed.*

---

* Decree reversed, *post p.* 532.

